## DANIEL McALEESE v. STATE OF NEBRASKA.

FILED DECEMBER 4, 1894.     NO. 6276.

1. **Contempt:** COUNTY CLERK: FAILURE TO OBEY ORDER TO PLACE NAME ON BALLOT. When by an order of a district judge a county clerk has been required to place upon official and sample ballots the name of a candidate and to make due return of his compliance at a time fixed, a failure to comply may be punished as being in contempt of the authority of such judge.

2. ———: JUDGMENT: REVIEW. Whether or not such failure has been satisfactorily explained is a question of fact determinable in the district court wherein the proceedings for the punishment for the alleged contempt was had, and the judgment of that court on this question will not be reversed unless it was clearly wrong.

3. ———: AFFIDAVIT: OATH ADMINISTERED BY NOTARY. Proceedings for the punishment of contempt of the character above indicated may be had upon an affidavit, sworn to before any officer by law authorized to administer an oath.

Error to the district court for Cheyenne county.   Tried below before Neville, J.

The facts are stated by the commissioner.

*George W. Heist* and *Henry St. Rayner*, for plaintiff in error:

An information must be sworn to before a judicial officer authorized to administer the oath, and not before, a notary public. (*Richards v. State*, 22 Neb., 150; *Davis v. State*, 31 Neb., 252.)

The mandate commanding the county clerk to perform an act contrary to the express provisions of the statute was unauthorized and void.   A statute which requires that certificates of nomination shall be filed with the county clerk not less than twelve days before the day of election is mandatory, and imperatively requires that twelve full days shall intervene, exclusive of the day of filing and the day of election. (*Howes v. Turner*, 1 C. P. D. [Eng.], 670; *Zouch v. Empsey*, 4 B. & Ald. [Eng.], 522; *Dousman v. O'Malley*, 1 Doug. [Mich.], 450; *Sallee v. Ireland*, 9 Mich., 154; *Robinson v. Foster*, 12 Ia., 186; *Arnold v. Nye*, 23 Mich., 293; Wigmore, Australian Ballot System, 187; *Small v. Edrick*, 5 Wend. [N. Y.], 137; *Columbia Turnpike Road v. Haywood*, 10 Wend. [N. Y.], 423; *Owen v. Slatter*, 26 Ala., 546; Sedgwick, Constitutional Limitations [2d ed.], 357.)

An order made by a court or judge in a proceeding in excess of the jurisdiction conferred upon such tribunal or judge, or commanding the performance of an illegal act, is not a lawful mandate, and failure to comply therewith cannot be punished as a contempt. (3 Am. & Eng. Ency. Law, 788, and cases cited; *Haines v. Haines*, 35 Mich., 143.)

To sustain a charge of contempt under subdivision 3 of section 5234, Consolidated Statutes, it must appear that the disobedience alleged was willful and, within the terms of

the statutes, a distinct and clear disobedience of a lawful process or order of the court. (3 Am. & Eng. Ency. Law, sec. 788, and cases; *Sherwin v. People*, 100 N. Y., 351; *Worden v. Searls*, 121 U. S., 14.)

*George H. Hastings, Attorney General*, and *H. D. Rhea*, for the state:

The power to punish for contempt is inherent in every court having common law jurisdiction, without regard to statute. (3 Am. & Eng. Ency. Law, 870, and cases cited; *Ex parte Robinson*, 1 Cent. L. J. [Ark.], 280.)

The court has power, outside of common law and statutory doctrine of contempt, to punish the clerk of the district court for willfully refusing to obey an order or to make return to a peremptory writ of *mandamus*. (*Briggs, Ex parte*, 64 N. Car., 202; *In re Wooley*, 11 Bush [Ky.], 95; *Stuart v. People*, 4 Ill., 395; *People v. Wilson*, 64 Ill., 195; *People v. Smith*, 3 Caines' Cas. [N. Y.], 221; *Commonwealth v. Newton*, 1 Grant [Pa.], 453.)

The following authorities were also referred to by the state: *Tolman v. Jones*, 114 Ill., 147; *Crosby's Case*, 3 Wils. [Eng.], 188; *Gist v. Bowman*, 2 Bay [S. Car.], 182; *Cossart v. State*, 14 Ark., 538; *Yates v. People*, 6 Johns. [N. Y.], 337; *Anderson v. Dunn*, 6 Wheat. [U. S.], 204; *McLaughlin v. District Court*, 5 W. & S. [Pa.], 272; *Ex parte Kearney*, 7 Wheat. [U. S.], 38.

RYAN, C.

The official ballot of Cheyenne county for the year 1892 contained the name of but one candidate for the office of county attorney, " W. P. Miles, of Sidney." The election was held on the 8th day of November. During that year plaintiff in error was county clerk. On October 27 there was presented to him for the purpose of being filed a certificate signed by seventy-three persons, whereby was nominated Leroy Martin as a candidate for county attorney, to

be voted for at the election above referred to.    Each signer certified that he was a legal resident and qualified voter of said county and opposite .his signature placed his address, as well as a description of his business and the place where it was carried on.    On the certificate thus presented plaintiff in error made this indorsement:

"Leroy Martin, county att'y.    Certificate presented October 27, 1892, at three o'clock P. M. and forty-eight minutes, and on account of the failure, on the part of the candidate named herein, to file the same in accordance with section 1753, Nebraska Statutes for 1891, the same is not received for filing.    D. McALEESE, *Co. Clerk.*

"JAMES McMULLEN, *Deputy.*"

On the 28th day of October, 1892, there was filed with the county clerk of the aforesaid county the following document:

"W. P. MILES, COUNTY ATTORNEY CHEYENNE COUNTY,
"SIDNEY, NEB., October 28, 1892.

"*To Daniel McAleese, County Clerk Cheyenne County, Nebraska:* You are hereby notified that I object to the filing of the certificate of nomination of Leroy Martin as a candidate for county attorney for Cheyenne county, for the following reasons, to-wit: Said certificate of nomination was not presented for filing within the time required by law.    W. P. MILES,

"*One of the Electors of Cheyenne County, Neb.*"

There was also filed with said clerk, in respect to said certificate, written objections, though the date whereon these were filed does not appear in the record.    They were, however, sworn to by John Williams, October 29, 1892.    These objections were to the certificate of nomination "on file" in the clerk's office.    As the certificate referred to was marked filed only once, which was on November 2, 1892, the date whereon the objections of Williams were filed is still further rendered uncertain by these considerations.

These objections were because, as Williams alleged, twenty-five names attached to the certificate of nomination were illegible, and because, among other signers, three were minors, in addition to which three there were ten other signers who were not electors.    There was no attempt to designate the illegible names, neither was there any attempt to name the signers who were alleged not to be electors.    On the 29th day of October, 1892, there was presented to Hon. William Neville, judge of the thirteenth judicial district of the state, authorized by section 16, chapter 24, acts 1891, an information on the relation of Leroy Martin, wherein was fully set forth the presentation of the certificate of nomination, hereinbefore described, to the respondent on October 27, and his refusal to file the same, from which it was charged would inevitably result the omission from the official ballot of the name of the relator.    The prayer was that a peremptory writ of *mandamus* might issue commanding the defendant forthwith to receive and file said certificate of nomination and cause to be printed the name of Martin on all the ballots to be used at the ensuing election.    On the day on which the above information was presented to him, Judge Neville made an order in which, after a recitation of the facts, was the following  mandate :

"Now, therefore, you are commanded to file said certificate of nomination as required by law and cause said nomination of said candidate to be printed upon the official and sample ballots to be used at the said next general election, or that you will appear before me in my office at North Platte, Nebraska, on next Tuesday, the 1st day of November, 1892, to show cause why you refused so to do."

This order was served on plaintiff in error on October 31, by the sheriff of Cheyenne county.    No showing was made as required by it to be done by November 1.    There was, however, filed on that day with Judge Neville the following answer, entitled as had been the information for a *mandamus*.

"Now comes Daniel McAleese, the respondent herein, and for answer, and for an excuse for not complying with the mandate of the court, denies the right of the relator herein to the relief sought.

"DANIEL McALEESE,
"By W. P. MILES,
"*His Attorney.*"

On the 2d day of November the certificate of nomination was indorsed in this language: "Filed November 2, 1892, D. McAleese, clerk Cheyenne county, by James Mc-Mullen, deputy clerk, in accordance with the ruling of the judge." On the day last described there was mailed to the party therein addressed the following notice:

"*To Leroy Martin, Sidney Neb.:* You are hereby notified that objections to your certificate of nomination as a candidate for county attorney of Cheyenne county, Nebraska, and to the printing of your name on either the sample or official ballots, as such candidate, have been filed in this office. The objections thereto have been sustained by me.    D. McALEESE,
"*Co. Clerk,*
"JAMES McMULLEN,
"*Deputy.*"

On the day following that on which the above communication was mailed to Leroy Martin there was presented to Judge Neville an information against Daniel McAleese, in which was recited the former order and the refusal of the respondent to comply therewith, and an order prayed requiring the respondent to correct the official ballots and distribute them in such manner that the name of Leroy Martin should thereon appear as a candidate for county attorney. The same day an order was made as prayed, and in addition requiring the plaintiff in error McAleese to make return to Judge Neville at his office of the compliance and doings by plaintiff in error thereon indorsed, on or before November 7, 1892, at 3 o'clock P. M. This

order was served on November 4. There was compli-
ance with this order, neither in the way of printing the
ballots, nor in making return by plaintiff in error of his
doings. On the 19th day of December, 1892, an affidavit
sworn to by James B. Ragan before B. A. Jones, a notary
public, was filed in the district court of Cheyenne county
in which was recited the facts hereinbefore stated. To-
gether with Daniel McAleese, William P. Miles, county
attorney, was charged with willful disregard of the orders
of Judge Neville. In regard to William P. Miles it was
alleged that at the time of his misconduct he was, and at
the time of complaint made continued to be, county attor-
ney of Cheyenne county. Following these averments was
the following language, to-wit:

"That by reason thereof it was the duty of said William
P. Miles, as a sworn officer of this court, to advise the said
McAleese to obey the process, order, and mandate of the
judge so heretofore made, but that notwithstanding the
facts aforesaid, then and there being in the county of Chey-
enne, and state of Nebraska, did then and there counsel
and advise with the defendant McAleese to refuse to obey
the orders of the judge, with intent to hinder and obstruct
the due administration of justice in the proceeding herein-
before named, then pending before said judge on the dates
of service aforesaid, and that they counseled and advised
with each other and together for the purpose of obstructing
the laws of the state, and the orders and mandates herein
made by William Neville, judge of the thirteenth judicial
district of Nebraska, made at chambers, North Platte.
Your informant further deposes and says that the said
William P. Miles was a candidate for county attorney of
Cheyenne county, Nebraska, to be voted for at the general
election therein on the 8th day of November, 1892, and
was interested in the result of said election, and that he
advised and counseled the defendant McAleese not to print
and to publish his name upon the sample and official bal-

lots, with intent and design to obtain an undue advantage, and unlawfully advised the defendant to refuse to file the petition and certificate of nomination of said Leroy Martin for county attorney, with intent thereby to deprive the citizens of the county aforesaid of the right to vote for the man of their choice for said office, and the said Miles corruptly advised the said McAleese to refuse to correct the sample and official ballots, and the said Miles corruptly advised the said Daniel McAleese to refuse to print unofficial ballots, and the said Miles corruptly advised the defendant McAleese to refuse to make return as respondent to the last order hereinbefore named, with intent to hinder and obstruct the administration of justice, and the said Miles failed to prosecute the defendant McAleese for the violation aforesaid, and advised with the defendant McAleese and his counsel, and assisted him with intent to hinder the due administration of justice in contempt of court, and contrary to the form of the statutes in such case made and provided, and against the peace and dignity of the state of Nebraska."

The defendants McAleese and Miles declined to plead and their requests for separate hearing were granted, for which reason the subsequent proceedings in this case concern only McAleese. It is insisted in his behalf that the proceedings for the punishment of contempt cannot be prosecuted upon an affidavit sworn to before a notary public. In *Gandy v. State*, 13 Neb., 445, it was held that no jury was allowed in proceedings of this kind, as the question involved affects the administration of justice and may require the prompt action of the court or judge to prevent an obstruction of the law or a failure of justice. In the case under consideration McAleese, the county clerk, was *ex officio* clerk of the district court of Cheyenne county. It could scarcely be required that of necessity the oath of the informant must be administered by this officer. Ordinarily, it would be well that proceedings of this kind

should be begun by the county attorney, but in this case this officer was likewise guilty of the contempt to be charged. It might be that the accusation against the county attorney would be malicious and unfounded. We cannot believe this true in this case. There is found in the evidence ample proof that Miles, to the extent of his ability, assisted in preventing the name of Martin from appearing upon the ballots to be used at the election at which he himself was a candidate for the same office. He was effectually able to do this, because he was then an incumbent of the same office and did not hesitate to use his official position to further his own candidacy. If these proceedings had been against McAleese alone, it is inconceivable that any one would be so stupid as to ask County Attorney Miles to act as prosecutor, for, without scruple or shame, he had been a selfish participant throughout the entire series of transactions to be investigated. Since, in these proceedings, the question involved affects the administration of justice, it would be manifestly absurd to require that they should be commenced before a justice of the peace, or other examining magistrate, as provided by section 585 of the Criminal Code, when, as in this case, the administration of justice interfered with was in the district court. By section 671 of the Code of Civil Procedure it is provided that persons punished for contempt in cases of the nature of that under our present consideration shall nevertheless be liable to indictment, if such contempt shall amount to an indictable offense. It is very clear that there was no error in entertaining jurisdiction upon proper affidavit, and it would be intolerable that the validity of the whole proceeding should be made to depend upon the particular class of officers empowered to administer oaths in which the officer who administered the oath belonged.

It is argued that the plaintiff in error was justified, under the provisions of section 8, chapter 24, Laws, 1891, in his refusal to file the certificate of nomination of Leroy

Martin, for the reason that it was presented for that pur-
pose on October 27, whereas the election took place on No-
vember 8 following.   Whether or not this was in due
time we do not feel called upon to determine, for the inter-
ference by plaintiff in error with the due administration of
justice does not depend upon his correct construction of the
requirement that in this particular class of cases certificates
should be filed not less than twelve days before election.
When he was required to appear before Judge Neville at
North Platte on November 1, it was his duty to do so, and
if there existed reasons for refusal to file the certificate of
nomination which he deemed important, he should have
presented them, and doubtless a proper order would then
have been made.   Instead of doing this he caused to be filed
an answer on the 1st day of November, in which he only
set up an alleged excuse for not complying with the man-
date theretofore issued, and that excuse was simply a denial
of the right of the relator to the relief sought.   When
afterwards it had been made known to Judge Neville that
plaintiff in error had refused to comply with the require-
ment that the name of Leroy Martin should be printed on
the ballots, and an order had issued requiring performance
as well as a return of his doings by the afternoon of No-
vember 7, plaintiff in error neither obeyed nor explained
the cause of his disobedience.    Even when in the district
court proceedings were begun against him for the disregard
of the orders of Judge Neville, he refused to plead, and it
was only to be gathered from the evidence why he claimed
justification of his conduct.    On the trial plaintiff in error
explained that he did not read that portion of the copy of
the order which required him to make return, and supposed
the return would be made by the sheriff.    The probability
of this explanation being true was one of the questions of
fact which the district court must by its judgment have
settled adversely to the plaintiff in error, and its estimate
of this explanation will not now be reviewed. Unexplained,

the refusal of the plaintiff in error to comply with the or-
ders made by Judge Neville justified a finding that he was
guilty of willful disobedience.    Whether the explanation
offered served to relieve the conduct of plaintiff in error
of its apparent contumaciousness was a question of fact,
the determination of which this court will not review un-
less the judgment of the trial court was clearly wrong—a
condition not found to exist in this case.  The punishment
inflicted was certainly not excessive, for the offense was
against the political rights of the people of Cheyenne
county.   An officer entrusted with the performance of a
duty upon which depends the right of voters to express
their choice of officers should not so far forget his respon-
sibility as to refuse to make a full and fair showing of all
the facts required of him by proper judicial authority.  If
in this regard he willfully disobeys in the interest of a par-
ticular candidate, or political party, he does so at his peril,
and a punishment even greater than that inflicted in this
case would probably be held not disproportionate to the
offense.   The judgment of the district court is

AFFIRMED.